## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID FELDMAN, on behalf of himself and all others similarly situated, | : : : : : : : : : : : : : : : : : | Case No._____ |
| Plaintiff, | | **CLASS ACTION COMPLAINT** |
| v. | | **DEMAND FOR JURY TRIAL** |
| UTZ QUALITY FOODS, LLC; GOOD HEALTH NATURAL PRODUCTS, INC.; GOOD HEALTH NATURAL PRODUCTS, LLC; PAT POSTS 1-10 and ABC CORPS. 1-10 (names being fictitious and unknown), | | |
| Defendants. | | |

Plaintiff Jed Weiss ("Weiss" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants, UTZ Quality Foods, LLC ("UTZ"), Good Health Natural Products, Inc., and Good Health Natural Products, LLC ("Good Health") (collectively, "Defendants"), demanding a trial by jury, and alleging as follows:

### NATURE OF THE CASE

1.      This is a proposed class action seeking redress for Defendants' unconscionable and deceptive[1] consumer practices in misrepresenting the vegetable content and the nutritional and health qualities of Good Health's "Extra Goodness!" products (the "Products").[2]

---

[1]      The terms "deceptive," "deceive," "deceptively," and "deception" encompass other descriptive terms, including various forms of the words: mislead, misrepresent, untrue, unfair, false, disparage, and unlawful.

[2]      The Products at issue include but are not limited to Good Health's "Extra Goodness!" products, including Veggie Straw Siracha, Disney Mickey Shaped Veggie Chips, Veggie Straws Sea Salt, Veggie Straws Jalapeno, Veggie Stix Sea Salt, Veggie Chips Sea Salt, Veggie Pretzels, Gluten Free Pretzels, and Organic Black Bean & Rice Tortillas.

2.      From approximately January 1, 2017 to the present (the "Class Period"), Defendants have engaged in a deceptive marketing campaign to convince consumers that the Products contain significant amounts of the actual vegetables shown in the marketing[3] and on the labeling[4] of the Products, are nutritious and healthful to consume, and are more healthful than similar products.

3.      Prior to January 1, 2017, Defendants purchased the NF-416 Vegetable (Blend #3) from Nutrifusion, LLC (the "Nutrifusion Blend"), which utilized a propriety processing method to create a nutrient blend derived from vegetables (the "Nutrifusion Blend").  A true and accurate copy of the Product Data Sheet for the Nutrifusion Blend is annexed hereto as **Exhibit A**.

4.      Defendants ceased purchasing the Nutrifusion Blend in December 2016 but have continued to use the same ingredient list, nutritional values, and vegetable-derived nutrient claims.

5.      Specifically, Defendants' Products no longer contain the following ingredient still listed in their ingredients list:  "Nutrients From A Proprietary Blend Of Vegetables (Spinach, Broccoli, Carrot, Tomato, Beet, Shiitake Mushroom).

6.      The vitamins now contained in the Products are from a synthetic source and are not vegetable-derived.

7.      This false and misleading labelling violates federal labeling law.

8.      Thus, although Defendants market their Products as healthful and nutritious, these Products are devoid of the health benefits Plaintiff and other reasonable consumers associate with consuming real vegetables.

---

[3]      Variants of the words "marketing," and "market" refer to all forms of advertising in all forms of media, including but not limited to print advertisements, television, and radio commercials, Product labels, viral marketing, incentives, and websites.

[4]      The term "labeling" encompasses other descriptive terms, including various forms of the words: labels, labeling, packages, and packaging.

CLASS ACTION COMPLAINT

9.      The amount of vegetables and nutrients from vegetables in the Products has a material bearing on price and consumer acceptance. Through the marketing, labeling, and overall appearance of the Products, Defendants create the false impression that the vegetables named and depicted on the labeling is present in an amount greater than is actually the case and that there is substantial nutritional value derived from those vegetables. Thus, Defendants are required to display the true percentage of vegetables in the Products' name on the front label, pursuant to 21 C.F.R. § 102.5. Defendants violate this requirement.

10.     Because Defendants fail to reveal the basic nature and characterizing ingredients—specifically, the true vegetable content and nutritional value from those vegetables—of the Products, Defendants' Products are not only deceptively labeled and marketed, they are also misbranded under Sections 403(a) and 403(q) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a) and (q). The Products cannot be legally manufactured, advertised, distributed, or sold in the U.S. as they are currently labeled. *See* 21 U.S.C. § 331.

11.     New York law forbids the misbranding of food in language largely identical to that found in the FDCA. Specifically, New York's Agriculture and Markets Law provides that a food is misbranded if "its labeling is false or misleading." N.Y. Agric. & Mkts. Law § 201. Thus, the Products are misbranded under New York law.

12.     The Sherman Law further provides that a product is misbranded if its labeling is "false or misleading." *Id.* § 110660. It is a violation of the Sherman Law to advertise any misbranded food, *id.* § 110398; to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded, *id.* § 110760; to misbrand any food, *id.* § 110765; or to receive in commerce any food that is misbranded or deliver or proffer it for delivery, *id.* § 110770.

13.     Defendants have been able to convince consumers to buy their Products over other similar snacks by deceiving consumers. Plaintiff and other reasonable consumers relied on Defendants' representations that the Products (1) contain significant amounts of the named and

CLASS ACTION COMPLAINT

depicted vegetables, (2) have a significant amount of their nutritional value derives from those vegetables, (3) are nutritious and healthful to consume, and (4) are more healthful than similar products.

14.     Defendants' deceptions played a substantial part in influencing Plaintiff's decisions to purchase the Products. Plaintiff relied on Defendants' packaging and labeling, including the misrepresentations of vitamin, nutritional, and vegetable content, to form his belief that Products were a more healthful alternative to other snacks. If Plaintiff had known the true vegetable content, as well as the true nutritional and health qualities of the Products he purchased, he would not have purchased the Products.

15.     Defendants' deceptive statements regarding the Products violate state and federal law, as detailed herein. As such, Plaintiff asserts claims on his behalf and on behalf of all purchasers of the Products for Defendants' breach of express warranty; breach of implied warranty; unjust enrichment; and violations of New York General Business Law § 349; New York General Business Law § 350.

## PARTIES

A.    **Plaintiff**.

16.     Plaintiff is a citizen of New York. He resides in Nassau County, New York, and bought Defendants' products in New York over the course of approximately eight years. During the Class Period, Plaintiff purchased Defendants' Products for himself and his family.

17.     Plaintiff wished to purchase healthy snacks for his family. When Plaintiff saw Defendants' misrepresentations prior to and at the time of purchase, he relied on Defendants' representations and claims that the Products contained significant amounts of the actual vegetables and nutrients from those vegetables that Defendants emphasized in the marketing and on the labeling of the Products, were nutritious and healthful, and were more healthful than similar products.

18.     Plaintiff typically purchased several varieties of the Products weekly, both before and after Defendants' reformulation of the Products in or around January 2017. Plaintiff suffered injury because he relied on Defendants' misrepresentations and would not have purchased the Products had Defendants not made misrepresentations in the Products' marketing and labeling. In the future, if Plaintiff knew that the Products had been changed to conform to the representations on their labels, e.g., that the Products actually were as depicted and represented, he would continue to purchase the Products. At present, however, Plaintiff cannot be confident that the marketing and labeling of the Products is, and will be, truthful and non-deceptive.

**B.     Defendants.**

19.     Defendant UTZ is a limited liability company organized under the laws of the state of Delaware. Its principal place of business is located at 900 High Street, Hanover, Pennsylvania 17331. UTZ is a nationally and internationally prominent maker of snacks, including chips and pretzels.

20.      Defendant Good Health Natural Products, LLC, is a limited liability company organized under the laws of the state of Delaware.  Its principal place of business is located at 900 High Street, Hanover, Pennsylvania 17331.  It is a subsidiary of Defendant UTZ.

21.     Defendant Good Health Natural Products, Inc., is a corporation organized under the laws of the state of Delaware.  Its principal place of business is located at 900 High Street, Hanover, Pennsylvania 17331.  It is a subsidiary of Defendant UTZ.

22.     At all times relevant hereto, the defendants, Pat Posts 1-10 and ABC Corps 1-10 (names being fictitious and unknown) were agents, servants, employees, or subsidiaries of Defendants, who were responsible for the production, marketing, or labelling of the Products.

## JURISDICTION AND VENUE

23.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges there are at least 100 members in the proposed Class (as defined below), the total claims of the proposed Class members are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, and a member of the proposed Class is a citizen of a State different from the State of citizenship of Defendants.

24.     This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: Plaintiff's claims arise out of Defendants' conduct within the State of New York.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this District, Plaintiff purchased the Products in this District, and Plaintiff resides in this District.

## GENERAL ALLEGATIONS

26.     Consumers increasingly and consciously seek out healthy foods and snacks—placing value on healthy vegetable-based snacks that contain natural ingredients, including vitamins. Consumers seek these types of snacks for various reasons, including perceived benefits of avoiding disease, and attaining health and wellness for themselves and their children and families.

27.     Defendants' deceptive practices capitalize on consumers' desire to purchase healthier snacks, and snacks that contain more vegetables and vegetable-derived nutrients.

28.    According to UTZ, it "is the largest independent, privately held snack brand in United States, producing over 3.3 million pounds of snacks per week (about half of which are potato chips) while operating over 900 company owned routes. Utz is also a leading snack supplier to Warehouse Clubs and Mass Merchandisers nationwide."[5]

29.    UTZ further claims at "All Utz Quality Foods products are labeled accurately with the most current ingredient information."[6]

A.    **Defendants' Deceptive Marketing of the Products.**

30.    Good Health promotes the "Extra Goodness" ingredient as providing "added nutrients from tomatoes, spinach, beets, broccoli and carrots."[7]

31.    Good Health further promotes news and reviews about the Products, including claims that: (i) "the proprietary Extra Goodness[TM]! Blend was born to create a snack with the same vitamins found in vegetables, while crafting a well-balanced blend that helped meet recommended daily vegetable servings"; (ii) they are "made with a blend of eight vegetables: carrots, sweet potatoes, kale, spinach, broccoli, tomatoes, beets, and shiitake mushrooms."[8]

32.    Both on the website and on the Products' packaging, Defendants claim they "pack our [Products] with Extra Goodness![TM] like nutrients (vitamins!) from tomatoes, spinach, beets, broccoli and carrots."[9]

---

[5]    UTZ website, Our Heritage, https://www.utzsnacks.com/timeline.html (last visited June 15, 2018).

[6] UTZ website, Health, https://www.utzsnacks.com/nutri-info.html (last visited June 15, 2018).

[7]    Good Health website, Good Ingredients, https://www.goodhealthsnacks.com/good-ingredients.html (last visited June 15, 2018).

[8] Good Health website, News, https://www.goodhealthsnacks.com/news.html (last visited June 15, 2018).

[9]    Good Health website, Good Snacks, https://www.goodhealthsnacks.com/good-snacks/categories/new/item/2-veggie-straws-sea-salt.html (last visited June 15, 2018).

CLASS ACTION COMPLAINT

33.     Defendants emphasize the "Extra Goodness" blend and pair this claim with images of the characterizing vegetables, further claiming that the Products "Contain[] the following vitamin values of veggies per serving." *See* Illustrations 1 and 2 below.

**Illustration 1**
**Good Health Veggie Straws**



**Illustration 2**
**"Extra Goodness!" Front Label**



34.     The Products packaging contains additional false claims on the rear of the packaging, stating:

> The following individual vitamin values found in 1 ounce of Veggie Straws are also found in the following quantities of vegetables:
> 2 1/2 Cups Broccoli = 25% Vitamin A! (227g)
> 3 ½ Beets = 24% Vitamin C! (287g)
> 5 Tomatoes = 15% Vitamin E! (615g)
> 7 Cups Spinach = 20% Vitamin B6! (270g)
> 2 Carrots = 20% Vitamin K! (122g)

*See* Illustration 3 below.

**Illustration 3**
**"Extra Goodness!" Back Label**



CLASS ACTION COMPLAINT

35.    Illustrations 2 and 3, above, fraudulently claim that the vitamins are derived from the vegetables depicted therein, including broccoli, beets, tomatoes, spinach, and carrots.

36.    Up until at least April 7, 2018, the Products' packaging further included inaccurate and misleading ingredient lists. *See* Illustration 4 below.

**Illustration 4**
**Good Health Veggie Straws Nutrition Facts and Ingredients**

# Nutrition Facts

Serving Size: 1 oz (28g)
Servings Per Container: 6

**Amount Per Serving**

| Calories 130 | Calories from Fat 60 |
|---|---|

| | % Daily Value* |
|---|---|
| **Total Fat** 6g | 10% |
| Saturated Fat 0.5g | 2% |
| *Trans* Fat 0g | |
| Polyunsaturated Fat 2g | |
| Monounsaturated Fat 3.5g | |
| **Cholesterol** 0mg | 0% |
| **Sodium** 200mg | 8% |
| **Potassium** 170mg | 5% |
| **Total Carbohydrate** 18g | 6% |
| Dietary Fiber 0g | 0% |
| Sugars 0g | |
| **Protein** 1g | |

| Vitamin A | 25% | • | Vitamin C | 25% |
|---|---|---|---|---|
| Calcium | 2% | • | Iron | 2% |
| Vitamin D | 20% | • | Vitamin E | 15% |
| Vitamin K | 20% | • | Vitamin B1 | 15% |
| Vitamin B2 | 2% | • | Vitamin B6 | 20% |
| Folate | 4% | • | Vitamin B7 | 2% |
| Magnesium | 2% | • | | |

* Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | | Calories: | 2,000 | 2,500 |
|---|---|---|---|---|
| Total Fat | Less than | | 65g | 80g |
| Sat Fat | Less than | | 20g | 25g |
| Cholesterol | Less than | | 300mg | 300mg |
| Sodium | Less than | | 2,400mg | 2,400mg |
| Potassium | Less than | | 3,500mg | 3,500mg |
| Total Carbohydrate | | | 300g | 375g |
| Dietary Fiber | | | 25g | 30g |

Calories per gram:
Fat 9    •    Carbohydrate 4    •    Protein 4

CLASS ACTION COMPLAINT

**Ingredients**:

Potato Starch, Dehydrated Potato, High Oleic Expeller Pressed Sunflower Oil Or Safflower Oil, Salt, Dehydrated Vegetables (Tomato, Parsley, Green Pepper, Spinach, Celery, Garlic), Vegetable Extracts For Coloring (Turmeric, Radish, Apple, Blackcurrant, Paprika), Potassium Chloride, Nutrients From A Proprietary Blend Of Vegetables (Spinach, Broccoli, Carrot, Tomato, Beet, Shiitake Mushroom), Sea Salt..

37.     Defendants ceased purchasing the Nutrifusion Blend (as reflected in the highlighted ingredient list in Illustration 4) in or around December 2016.

38.     Upon information and belief, Defendants instead chose to utilize a cheaper synthetic blend to fortify the Products with vitamins.

39.     However, for at least a year and a half after Defendants ceased utilizing the Nutrifusion Blend, they continued to list it as an ingredient.

40.     Defendants finally updated the ingredient list for the Products to remove the ingredient "Nutrients from A Proprietary Blend Of Vegetables" and include the synthetic ingredients used to fortify the Products with vitamins. *See* Illustration 5 below.

**Illustration 5**
**Updated Good Health Veggie Straws Ingredient List[10]**

**Ingredients:**

Potato Starch, Dehydrated Potato, Expeller Pressed Sunflower Oil Or Safflower Oil, Salt, Dehydrated Tomato, Potassium Chloride, Dehydrated Spinach, Dehydrated Parsley, Dehydrated Green Pepper, Dehydrated Oregano, Dehydrated Garlic, Turmeric (For Color), Vegetable And Fruit Extracts For Color (Radish, Apple And Blackcurrant), Paprika Extract, Ascorbic Acid (Vitamin C), Dehydrated Beet, Alpha-Tocopherol Acetate (Vitamin E), Vitamin A Palmitate, Dehydrated Carrot, Dehydrated Broccoli, Pyridoxine Hydrochloride (Vitamin B6), Thiamin Mononitrate (Vitamin B1), Phytonadione (Vitamin K), Sea Salt

41.     Defendants further represent that the Products have "No Added Preservatives."[11]

---

[10]     Good Health Website, Good Snacks, https://www.goodhealthsnacks.com/good-snacks/categories/new/item/2-veggie-straws-sea-salt.html (last accessed June 18, 2018).

[11]     Good Health website, Good Snacks, https://www.goodhealthsnacks.com/good-snacks/categories/new/item/2-veggie-straws-sea-salt.html (last accessed June 18, 2018).

CLASS ACTION COMPLAINT

42.    However, a review of the ingredient list shows the following preservatives: Ascorbic Acid, Alpha-Tocopherol Acetate, and Vitamin A Palmitate.

43.    Plaintiff and other reasonable consumers rely on Defendants' material representations when they purchase the Products—believing that the Products are healthful and made with significant amounts of the vegetables and vegetable-derived nutrients depicted in the marketing and labeling of the Products.

44.    Defendants violated the trust of Plaintiff and class members because the Products are not the vegetable-packed healthy snacks that their marketing and labeling represent them to be.

**B.    The Products Do Not Contain Significant Amounts of the Vegetables or Vegetable-Derived Vitamins Depicted, and Are Not Healthful.**

45.    Defendants' claims about the vegetable content and the nutritional qualities and healthfulness of the Products are deceptive. Although the marketing and labeling of the Products depict certain vegetables, those vegetables are not the predominant ingredient or even present in the Products. Instead, the Products contain significant amounts of sodium and potato starch, as well as synthetic nutrients.

46.    For example, the marketing and labeling for the Veggie Straws Sea Salt prominently feature depictions of broccoli, beets, tomatoes, spinach, and carrots, but the Products only contain minimal amounts of dehydrated spinach, beets, carrots, and broccoli. The Product also does not provide any dietary fiber, a key substance found in real vegetables that is essential for good health.

47.    In short, Defendants' Products contain very little of the vegetables Defendants depict in the Products' marketing and labeling.

48.     Significantly, after Defendants ceased using the Nutrifusion Blend as an ingredient in or around December 2016, they started using synthetic nutrients to fortify their Products, but continued to use marketing and labelling that claimed the nutrients were vegetable-derived.

49.     Defendants represent to Plaintiff and other consumers that the Products are healthful despite the fact that the Products Snacks are made in large part with potato starch, much like ordinary potato chips, contain preservatives, and of unlawfully fortified with synthetic vitamins.

50.     In fact, there is only a tiny amount of vegetable-like ingredients in the Products. To illustrate, the Products contain 0 grams of dietary fiber, a key disease-preventing and health-promoting component of real vegetables. And the Products only contain vitamins by virtue of illegal fortification—not because of the vegetable-like ingredients.

51.     Defendants claim that the Products contain "25% Vitamins A," "25% Vitamin C," "15% Vitamin E," 20% Vitamin B6," and "20% Vitamin K." This violates FDA's Fortification Policy.[12] FDA prohibits fortification of "sugars[] or snack foods" that "could result in deceptive or misleading claims for certain foods."[13]

52.     If Defendants had not illegally fortified the Products with vitamins A, C, E, B6, and K[14] they could not claim that these snacks were a nutritious, vitamin-rich food.

53.     In addition, Defendants' marketing and labeling deceive Plaintiff and other reasonable consumers and cause them to believe that these vitamins are present in the Products due to the Products' vegetable content. Unfortunately for consumers, the synthetic vitamins

---

[12]     "The Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify . . . sugars; or snack foods such as candies . . . ." 21 C.F.R. § 104.20(a).

[13]     *Id*.

[14]     The ingredients list includes "Ascorbic Acid (vitamin C), … Alpha-Tocopherol Acetate (vitamin E), Vitamin A Palmitate."

CLASS ACTION COMPLAINT

Defendants add to the Products do not provide the same health benefits as vitamins obtained by eating vegetables.[15] This is one of the reasons that the 2015 Dietary Guidelines recommend obtaining nutrients from food and not vitamins, and advocate "achieving healthy dietary patterns through healthy food and beverage choices rather than with nutrient or dietary supplements except as needed."[16]

54.     In short, vitamins are illegally added to the Products, the vitamins are not derived from vegetables, the minimal vegetable-like ingredients in the Products bear very little resemblance to vegetable images and serving sizes depicted in the marketing and labeling, and preservatives are present in the Products.

55.     Despite the limited ingredients derived from actual vegetables, Defendants market the Products as though they do contain the named and depicted vegetables in substantial amounts.

56.     Defendants also seek to market their Products as a healthier, less potato chip-like alternative to competing products in the chips category, by emphasizing the purported vegetable and nutrient content.

57.     Defendants are able to sell the Products to consumers by deceiving consumers about the healthfulness and content of the Products and distinguishing the them from competitors' products. Defendants are motivated to deceive consumers for no other reason than to take away market share from competing companies to further increase their own profits.

58.     In short, Defendant's Products are promoted as a healthful snack alternative, when in fact the Products lack significant amounts of real vegetables, contain no dietary fiber, and

---

[15]      *See, e.g.*, Rui Hai Liu, *Health Benefits of Fruits and Vegetables are from Additive and Synergistic Combinations of Phytochemicals*, 78 Am. J. Clin. Nutr. 517S, 517S–520S, at 518S (2003); Inst. of Medicine, Food and Nutrition Board, Dietary Reference Intakes for Vitamin C, Vitamin E, Selenium, and Carotenoids, Nat'l Academy Press (2000).

[16]      *Available at* http://www.health.gov/dietaryguidelines/2015-scientific-report/PDFs/04-Integration.pdf.

CLASS ACTION COMPLAINT

contain a significant amount of vitamins only due to improper fortification. Thus, stating that the Products have vegetable-derived nutrients and representing that they are beneficial to consumers' health is misleading and deceptive.

**C.**    **The Products are Misbranded.**

59.    Under FDCA section 403, a food is "misbranded" if "its labeling is false or misleading." *See* 21 U.S.C. §§ 343(a).

60.    The amount of vegetables in the Products has a material bearing on price and consumer acceptance. Moreover, Defendants' marketing and labeling of the Products—including the imagery of certain vegetables—creates the erroneous impression that the vegetables depicted in the Products' marketing and labeling is present in an amount greater than is actually the case. Thus, Defendants are required to display the true percentage of vegetables in the product name on the front label, pursuant to 21 C.F.R. § 102.5. Defendants violate this requirement.

61.    Because the Defendants fail to reveal the basic nature and characterizing properties of the Products (including the continued use of an outdated ingredient list for approximately a year and a half), Defendants' Products are not only sold with misleading labeling but are also misbranded under Section 403(a) of the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. §§ 343(a), and cannot be legally manufactured, advertised, distributed, or sold in the U.S. as they are currently labeled. *See* 21 U.S.C. § 331.

62.    By misrepresenting the basic nature and characterizing properties of the Products, Defendants violate these federal and state regulations and mislead Plaintiff and consumers alike.

## CLASS ALLEGATIONS

63.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons in the United States who purchased Defendants' Products during the Class Period (the "Class"). Excluded from the Class are officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, and

their legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest.

64.    Plaintiff also seeks to represent a subclass of all Class members who purchased the Products in the state of New York (the "New York Subclass").

65.    At this time, Plaintiff does not know the exact number of Class members, but— given the nature of the claims and the number of retail stores selling Defendants' Products— Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

66.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

a)    Whether Defendants marketed, packaged, or sold the Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations, including statements or representations concerning the nutritional and health qualities of its Products;

b)    Whether Defendants omitted or misrepresented material facts in connection with the sales of its Products;

c)    Whether Defendants participated in and pursued the common course of conduct complained of herein;

d)    Whether Defendants' marketing, labeling, or selling of the Products as healthful and nutritious constitutes an unfair or deceptive consumer sales practice;

e)    Whether Defendants have been unjustly enriched as a result of their unlawful business practices;

f)    Whether Defendants' actions as described above violate New York General Business Law § 349, *et seq*.;

g)    Whether Defendants' actions as described above violate the New York General Business Law § 350, *et seq*.;

CLASS ACTION COMPLAINT

h)   Whether Defendants should be enjoined from continuing the above-described practices;

i)   Whether Plaintiff and members of the Class are entitled to declaratory relief; and

j)   Whether Defendants should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices.

67.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendants' Products at a premium price in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

68.     Plaintiff will adequately protect the interests of the Class and have retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

70.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

71.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even though certain Class members might not be parties to such actions.

72.     Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### Breach of Express Warranty

73.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

74.    Plaintiff brings this Cause of Action individually and on behalf of the members of the Class.

75.    Defendants expressly warrant in their marketing, labeling, and promotion of the Products that they contain a significant amount of vegetables and vegetable-derived vitamin, are nutritious, and healthful to consume. These statements are untrue as detailed above. These promises of vegetable and vegetable-derived vitamin content specifically relate to the goods being purchased and became the basis of the bargain.

76.    Plaintiff and members of the Class purchased the Products based upon the above said express warranties made in Defendants' marketing and labeling of the Products.  Defendants breached their express warranty by selling the Products that did not conform to the warranties they made.

77.    Plaintiff and the Class were injured as a direct and proximate result of Defendants' breach and deserve to be compensated for the damages they suffered. If Plaintiff and the Class had known the true facts concerning the vegetable and vegetable-derived vitamin content of the Products, they would not have purchased the Products.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty

78.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

79.    Plaintiff brings this Cause of Action individually and on behalf of the members of the Class.

80.    As the manufacturers, marketers, distributors, or sellers of the Products, Defendants impliedly warrant that the Products are merchantable and fit for their intended purpose and conform to the promises or affirmations of fact made in the Products' promotions, marketing,

labeling, and labels, in that they were healthful and nutritious snack options for consumers and their families and children, and contained significant amounts of the vegetable and vegetable-derived vitamin content Defendants named and depicted.

81.     Defendants breached the warranty implied in the bargain for the sale of the Products, in that the Products are not the vegetable and vitamin packed healthy snacks that their marketing and labeling make them appear to be, and thus they do not conform to Defendants' warranties. As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

82.     In reliance on Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and Class members purchased the Products for use as vegetable and vitamin packed healthy snacks.

83.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because (a) they would not have purchased the Products had they known that the Products did not contain significant amounts of the actual vegetable and vegetable-derived vitamin content shown in the marketing and on the labeling of the Products, and were not nutritious and healthful to consume, and were not more healthful than similar products; (b) they paid a price premium for the Products based on Defendants' false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because the Products contained preservatives, lacked significant amounts of real vegetable, lacked vegetable-derived vitamins, and contained no dietary fiber.

### THIRD CAUSE OF ACTION
#### Unjust Enrichment

84.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

85.     Plaintiff brings this cause of action individually and on behalf of members of the Class.

86.    Plaintiff and members of the Class conferred benefits on Defendants by purchasing the Products.

87.    Defendants have knowledge of such benefits.

88.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class and Subclass members' purchases of the Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendants falsely and misleadingly represent that the Products contain significant amounts of the actual vegetable and vegetable-derived vitamin content shown in the marketing and on the labeling of the Products, are nutritious and healthful to consume, and are more healthful than similar products when, in fact, the Products contain preservatives, lack significant amounts of real vegetables, lack vegetable-derived vitamins, contain no dietary fiber, and only contain a significant amount of vitamins due to improper fortification.

89.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## FOURTH CAUSE OF ACTION
### Deceptive Acts or Practices,
### In Violation of New York General Business Law § 349, *et seq.*

90.    Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

91.    Plaintiff brings this Cause of Action individually and on behalf of the members of the New York Subclass against Defendants.

92.    By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misrepresenting the characteristics, ingredients, and benefits of the Products.

93.    The foregoing deceptive acts and practices were directed at consumers.

94.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, and benefits of the Products to induce consumers to purchase the Products.

95.     Plaintiff and members of the New York Subclass were injured because: (a) they would not have purchased the Products had they known that the Products did not contain significant amounts of the actual vegetables and vegetable-derived vitamins shown in the marketing and on the labeling of the Products, and were not nutritious and healthful to consume, and were not more healthful than similar products; (b) they paid a price premium for the Products based on Defendants' false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because the Products contained preservatives, lacked significant amounts of real vegetables and vegetable-derived vitamins, and contained no dietary fiber. As a result, Plaintiff and the New York Subclass have been damaged because they purchased more of Defendants' Products than they would have or paid more than they would have for Defendants' Products had they known the statements on Defendants' Products conveying that they were made from significant amounts of vegetables, contained vegetable-derived vitamins, and being healthful are contrary to the actual ingredients of the Products.

96.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION
### False Advertising,
### In Violation of New York General Business Law § 350, *et seq.*

97.     Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

98.     Plaintiff brings this Cause of Action individually and on behalf of the members of the New York Subclass against Defendants.

99.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way, which constitutes false advertising in violation of Section 350 of the New York General Business Law.

100.     Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the foregoing misrepresentations, were and are directed to consumers.

101.    Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the foregoing misrepresentations, were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

102.    Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the foregoing misrepresentations, have resulted in consumer injury or harm to the public interest.

103.    Plaintiff and members of the New York Subclass have been injured because: (a) they would not have purchased the Products had they known that the Products in fact contained preservatives, lacked significant amounts of real vegetables and vegetable-derived vitamins, contained no dietary fiber, and contributed to decreasing overall health; (b) they paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because the Products contained preservatives, lacked significant amounts of real vegetables and vegetable-derived vitamins, and contained no dietary fiber. As a result, Plaintiff and the New York Subclass have been damaged because they purchased more of Defendants' Products than they would have or paid more than they would have for Defendants' Products had they known the statements on Defendants' Products conveying that they were made from vegetable and vegetable-derived vitamins, and were healthful are contrary to the actual ingredients of the Products.

104.    As a result of Defendants' false, misleading and deceptive statements and representations of fact, including but not limited to the foregoing misrepresentations, Plaintiff has suffered and continue to suffer economic injury.

105.    Plaintiff and members of the New York Subclass suffered an ascertainable loss caused by Defendants' Misrepresentations because they purchased more of Defendants' Products than they would have or paid more than they would have for Defendants' Products had they known the truth about the product.

106.    On behalf of himself and other members of the Class and New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual

CLASS ACTION COMPLAINT

damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

Plaintiff, on his own behalf and on behalf of the Class, and New York Subclass, pray for the following relief:

A.      For an order certifying the nationwide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representatives and his attorneys as Class Counsel to represent the Class members;

B.      For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.      For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 2, 2018

**ANSELL GRIMM & AARON, P.C.**

*s/Joshua S. Bauchner*
Joshua S. Bauchner, Esq.
jb@ansellgrimm.com
Michael H. Ansell, Esq.
mha@ansellgrimm.com
365 Rifle Camp Road
Woodland Park, New Jersey 07424
(973) 247-9000 (t)
(973) 247-9199 (f)

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT